# EXHIBIT A

US008819120B1

## (12) United States Patent
### Wang et al.

(10) Patent No.: **US 8,819,120 B1**
(45) Date of Patent: **Aug. 26, 2014**

(54) **METHOD AND SYSTEM FOR GROUP COMMUNICATIONS**

(75) Inventors: **Jinsheng Wang**, Sunnyvale, CA (US); **Lu Wang**, Sunnyvale, CA (US)

(73) Assignee: **Back Micro Solutions LLC**, Dover, DE (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **12/948,761**

(22) Filed: **Nov. 18, 2010**

### Related U.S. Application Data

(63) Continuation of application No. 12/790,816, which is a continuation of application No. 10/970,309, filed on Oct. 20, 2004, now Pat. No. 7,730,129.

(51) **Int. Cl.**
*G06F 15/16* (2006.01)

(52) **U.S. Cl.**
USPC ........... **709/203**; 709/206; 709/204; 709/205; 709/219; 725/135

(58) **Field of Classification Search**
USPC .................................................. 709/204, 206
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,408,333 A | 4/1995 | Kojima et al. | |
| 5,479,602 A | 12/1995 | Baecker et al. | |
| 5,553,110 A | 9/1996 | Sentoku et al. | |
| 5,771,380 A | 6/1998 | Tanaka et al. | |
| 5,923,848 A | 7/1999 | Goodhand et al. | |
| 5,956,035 A | 9/1999 | Sciammarella et al. | |
| 6,020,980 A | 2/2000 | Freeman | |
| 6,463,460 B1 * | 10/2002 | Simonoff | 709/203 |

| | | | |
|---|---|---|---|
| 6,496,206 B1 | 12/2002 | Mernyk et al. | |
| 6,501,487 B1 | 12/2002 | Taguchi | |
| 6,539,421 B1 | 3/2003 | Appelman et al. | |
| 6,557,027 B1 * | 4/2003 | Cragun | 709/204 |
| 6,618,747 B1 | 9/2003 | Flynn et al. | |
| 6,938,042 B2 | 8/2005 | Aboulhosn et al. | |
| 7,130,880 B1 * | 10/2006 | Burton et al. | 709/203 |
| 7,185,054 B1 | 2/2007 | Ludwig et al. | |
| 7,206,809 B2 | 4/2007 | Ludwig et al. | |
| 7,234,117 B2 * | 6/2007 | Zaner et al. | 715/758 |
| 7,286,256 B2 | 10/2007 | Herbert | |
| 7,353,252 B1 * | 4/2008 | Yang et al. | 709/204 |
| 7,375,730 B2 | 5/2008 | Tagliabue et al. | |
| 7,404,001 B2 | 7/2008 | Campbell et al. | |

(Continued)

### OTHER PUBLICATIONS

IBM, Lotus Domino, Administering the Domino System, vol. 1, 2002, published by IBM Corporation, downloadable from www-12. lotus.com/ldd/doc/uafiles.nsf/docs/domino6PR2/$File/adminvol1. pdf.

(Continued)

*Primary Examiner* — Kyung H Shin
(74) *Attorney, Agent, or Firm* — Brundidge & Stanger, P.C.

(57) **ABSTRACT**

A group communication system is disclosed. The group communication system integrates a number of electronic communication tools to meet various communication needs among registered users. The group communication system allows a group of users to participate in communications including internal mail, message exchanging and accessing files. When a member of a group shares a file with another member or members of the group, instead of sending a copy of the file directly to the members, the file is retained in a file store remotely located. Each of the members in the group gets notified of the availability of the file for sharing, thus avoiding distributing copies of the file to the members regardless they need it or not.

**22 Claims, 12 Drawing Sheets**



**US 8,819,120 B1**

Page 2

(56)  **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 7,536,654 B2 | 5/2009 | Anthony et al. | |
| 7,761,802 B2 | 7/2010 | Shah et al. | |
| 2002/0078153 A1* | 6/2002 | Chung et al. | 709/204 |
| 2002/0080230 A1 | 6/2002 | Van De Sluis et al. | |
| 2002/0109770 A1 | 8/2002 | Terada | |
| 2002/0112007 A1 | 8/2002 | Wood et al. | |
| 2002/0131566 A1 | 9/2002 | Stark et al. | |
| 2003/0007016 A1 | 1/2003 | Laffey et al. | |
| 2003/0014512 A1 | 1/2003 | Tanimoto | |
| 2003/0122922 A1 | 7/2003 | Saffer et al. | |
| 2003/0126216 A1* | 7/2003 | Avila et al. | 709/206 |
| 2003/0169288 A1 | 9/2003 | Misawa | |
| 2003/0182428 A1 | 9/2003 | Li et al. | |
| 2003/0184587 A1 | 10/2003 | Ording et al. | |
| 2004/0054802 A1 | 3/2004 | Beauchamp et al. | |
| 2004/0117456 A1 | 6/2004 | Brooks | |
| 2004/0122693 A1 | 6/2004 | Hatscher et al. | |
| 2005/0091272 A1 | 4/2005 | Smith et al. | |
| 2005/0160145 A1 | 7/2005 | Gruen et al. | |
| 2005/0160160 A1 | 7/2005 | Wang | |
| 2005/0262547 A1* | 11/2005 | Langlais | 725/135 |
| 2007/0083623 A1 | 4/2007 | Nishimura et al. | |
| 2008/0294726 A1* | 11/2008 | Sidman | 709/206 |
| 2009/0138808 A1 | 5/2009 | Moromisato et al. | |

OTHER PUBLICATIONS

Desktop Messaging User Guide for Lotus Notes, CallPilot, TM, Release 2.0, Nortel Networks, Sep. 2002, downloadable from http://www.uniquecomm.com/docs/CallPilot_Desktop_Messaging_User_Guide_LotusNotes.pdf.

"MailCat: An Intelligent Assistant for Organizing E-Mail", by Richard B. Segal and Jeffrey O. Kephart, IBM Thomas J. Watson Research Center, Yorktown Heights, NY 10598, Autonomous Agents '99 Seattle WA USA.

"A data exchange framework for networked CAD/CAM", Computers in Industry, 2001, 131-140.

John C. Tang. Supporting Collaboration through Teleproximity. In Proceedings of WWCA'1998. pp. 349-363.

"An experimental peer-to-peer email system", 2008 IEEE Int. Conf. on Computational Science and Engineering, 203-208.

"NFS-based secure file sharing over multiple administrative domains", Systems and Computers in Japan, Jun. 2002.

"DIN-A-MIT: an adaptable, distributed computer-based messaging system", Computer Networks, 1984, 93-105.

"A pilot implementation of electronic mail at Combustion Engineering", Clinic on Library Applications of Data Processing, 1979.

"A model for naming, addressing and routing", ACM Trans. on Office Information Systems, Oct. 1986, 293.

"The Computer Based Mail Environment—An Overview", Computer Networks, 1981, 435-443.

"Naming and addressing in a computer-based mail environment", IEEE Trans. Communications, Jan. 1982.

"Framework and functions of the MS Personal Message System", RAND Report R-2134-ARPA, Dec. 1977, downloadable from http://www.rand.org/content/dam/rand/pubs/reports/2007/R2134.pdf.

"Notification for shared annotation of digital documents", ACM SIG CHI 2002.

IBM, Lotus Domino, Administering the Domino System, vol. 1, 2002, published by IBM Corporation, downloadable from www-12.lotus.com/ldd/doc/uafiles.nsf/docs/domino6PR2/$File/adminvol1.pdf.

"Using America Online Third Edition", ISBN 077897-0826-4 referred to as "AOL", Gene Steinberg 1996.

* cited by examiner



*Fig. 1A*



*Fig. 1B*



FIG. 2A



FIG. 3A



FIG. 2B



FIG. 2C



*FIG. 2D*



*FIG. 3C*

*FIG. 3B   (Prior Art)*

|  | Prior Art Email | i-mail |
|---|---|---|
| Account Setup | Step 1: Display Name<br>Step 2: Email address (e.g. john@abc.com)<br>Step 3: Server Type (POP3, IMAP, HTTP)<br>  e.g.: incoming Server Name: pop3.abc.com<br>  outgoing Server Name: smtp.inbit.com<br>Step 4: Account Name and Password on the server | YES<br>NO<br>NO<br><br>YES |
| Sender/Receiver Identity | Sender identity is not always known (thus enabling spamming)<br><br>No control on adding new users<br>can be from any system<br>no consistent naming method | Sender identity always certain (no spamming)<br><br>Controlled<br>Closed loop<br>Consistent |
| Email composition | Must have Sender email address (explicit / implicit)<br>Must have Receiver email address (explicit / implicit)<br>Optional Cc, Bcc receiver email address (explicit / implicit)<br>Subject/Message Body<br>Accept Attachments | NO<br>NO<br>NO<br>YES |
| Delivery/Receiving Method | Requires DNS name servers to locate a receiver<br><br>Typically have Push - Push- Pull processes | No (always in the same systems)<br>Only Push/Push or Push/Pull process |
| Benefits | messages from inside the entity<br>messages from unpredictable sources (facilitating spamming, virus spreading, ad-ware, breaks/leaks/holes) | YES<br>NO |

*FIG. 3D*



**System Settings**

Start | Capture Rules | Names | Features

Select online screen capture policies among users.

○ Do not check permissions.

All users can capture each other's screens without permissions.

○ Check permissions based on user types.

A Standard User must have permissions to capture another user's screens.

A Helpdesk Agent can capture a Standard User's screens without permissions.

A Helpdesk Agent must have permissions to capture another Helpdesk Agent's screens.

○ Check permissions on users of all kinds.

All users must have permissions to capture another user's screens.

OK | Cancel | Apply

**FIG. 4C**



Online

Public
  Online Users
    Amy
    Becky
    David
    Frank
  Directory
    Amy
    Beck
    Cath
    Davi
    Edw
    Fran
    Glor
    Henry
    Jack

Start Private Chat...
Send E-mail...
Send File Offline...
Capture User Screen
Capture User Window
User Info...

Online | Explore

**FIG. 4A**



*FIG. 4B*



*Fig. 5*



*Fig. 6*

US 8,819,120 B1

**1**

## METHOD AND SYSTEM FOR GROUP COMMUNICATIONS

### CROSS REFERENCE TO RELATED APPLICATION

This is a continuation of U.S. application Ser. No. 12/790,816 which is a continuation of U.S. application Ser. No. 10/970,309 filed on Oct. 20, 2004, now U.S. Pat. No. 7,730,129.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention is related to the area of computer-facilitated communications over networks, and more particularly related to techniques for providing a collaborative platform that includes one or more messaging environments, in each of which users interested in one or more subjects can communicate by way of instant messaging, file sharing, electronic mailing, and remote screen capturing, wherein the collaborative platform is designed to be non-intrusive in view of other communication systems available today.

2. Description of the Related Art

The Internet is a data communication network of interconnected computers and computer networks around the world and has been rapidly evolving to the point where it combines elements of telecommunications, computing, broadcasting, publishing, commerce, and information services into a revolutionary new business infrastructure. The economy on the Internet is growing in every aspect of life, a wide range of businesses including stock trading, commodities, products, and services ordering are all via the Internet.

A modern enterprise operates largely on the ability to quickly share information or respond to changing information via the Internet. Electronic messaging systems such as email and instant messaging have provided convenient tools for contacting or keeping in touch with people or groups of people efficiently. These systems provide fast and inexpensive means for individuals to communicate and collaborate. Reliance on the electronic communication has increased even more remarkably with the globalization and trend of outsourcing. As technology advances, it is certain that organizations, large or small, will become more dependent on the electronic messaging systems to excel in a competitive environment.

One popular type of electronic messaging systems is electronic mail or simply email that facilitates users to carry on "conversations" with other computer users. Although Internet telephony allows actual real-time voice conversations, email ensures guaranteed delivery of messages even if one side is not currently present (i.e., online). For users interested in a subject or working on a related project, email provides collaborative means to share ideas and data, and for discussion so as to keep all in a loop. However, one of the unwanted features with the email systems is Spam that is unsolicited email messages. Spammers typically send a piece of email in millions to a distribution list of email addresses, expecting that some of the readers will respond to the email. It is reported that some email accounts could receive thousands of unwanted email in a day. Spam has become a major problem for all Internet users.

In addition, unwanted or expected email with attachments, large or small, as file sharing are often received from co-workers or known individuals. Although such email with attachments is not considered as a Spam, they nevertheless take up a significant portion of the bandwidth of a network

**2**

and could choke the network when the size of the email is enormous, resulting in a negative impact on the operation and efficiency of the network. Many enterprises have to implement a policy to prohibit company wise distributions of large email.

To keep communications private among those sharing common interest, instant messaging (sometimes called IM) is getting popular and quickly becoming another preferable communication tool to complement the email. IM provides a mechanism to easily see whether chosen friends or co-workers are connected to the Internet and, if they are, to exchange messages with them in real time. Instant messaging differs from the ordinary email in the immediacy of the message exchange and also makes a continued exchange simpler than sending email back and forth. However, unlike email, the IM requires that all communicating parties must be present before an IM session can take place. The IM also restricts file sharing among the parties, although a peer-to-peer IM session allows file transferring between two parties.

What a modern enterprise desires is a true collaborative environment in which co-workers or individuals involved can share information and data, and participate in discussion confidentially without intrusions from others, regardless where they are and in what time zone. Email and IM each provide some features desired for a true collaborative environment but none offers all. The present invention discloses a collaborative platform that facilitates such requirements. Besides providing a non-intrusive communication platform, the present invention also provides data mobility to users.

### SUMMARY OF THE INVENTION

This section is for the purpose of summarizing some aspects of the present invention and to briefly introduce some preferred embodiments. Simplifications or omissions may be made to avoid obscuring the purpose of the section. Such simplifications or omissions are not intended to limit the scope of the present invention.

The present invention provides a true group (collaborative) communication platform or system that allows users registered with the system to communicate with each other without intrusion from others outside the system. The collaborative communication system contemplated in the present invention integrates a number of electronic communication tools to meet the collaborative communication needs for an enterprise, family members or friends. All communications are within the system. External communications such as email spamming would not intrude the system.

According to one aspect of the present invention, registered users in the system are provided public, group and private arenas or domains. Depending on the privacy, communications with others may be conducted in any one of these domains. The public domain may be configured to show a list of representations for all registered users. The representations may be photo images, specially colored icons or names of the users to facilitate selections of users for communications.

According to another aspect of the present invention, communications with other users in the system can be conducted through electronic internal mail (herein "i-mail"), instant messaging and file sharing. In particular, the i-mail operates on identifiers pertaining to registered users, all email messages by the i-mail are delivered not based on the traditional email addresses but on the identifiers, thus eliminating the possibility of the registered users receiving unwanted email from other users outside the system.

According to still another aspect of the present invention is file lists respectively in the public, group and private domains.

US 8,819,120 B1

3

These file lists provide bulletin board functions to list files available for downloading whenever needed, essentially eliminating the simultaneous wide distribution of an email message with attachments of the files to all concerned.

The present invention may be implemented in software, hardware or a combination of both and practiced as systems, processes, or methods. One of the objects, features, and advantages of the present invention is to provide a non-intrusive collaborative communication system that facilitate all types of communications, either online or offline, within registered users.

Other objects, features, and advantages of the present invention will become apparent upon examining the following detailed description of an embodiment thereof, taken in conjunction with the attached drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

These and other features, aspects, and advantages of the present invention will become better understood with regard to the following description, appended claims, and accompanying drawings where:

FIG. 1A shows a basic system configuration in which the present invention may be practiced in accordance with one embodiment thereof;

FIG. 1B shows exemplary internal construction blocks of a system in which the present invention may be implemented and executed;

FIG. 2A shows an online panel or a window display of a client machine in accordance with one embodiment;

FIG. 2B shows an exemplary user interface or display of a client module implementing one embodiment of the present invention;

FIG. 2C shows a configuration in which there are three stores that may be allocated as part of a network storage space or distributed on a network;

FIG. 2D shows an exemplary of using photo thumbnails images to be associated with registered users;

FIG. 3A shows a launch of i-mail by selecting a recipient under the Online Users or Directory in the Public domain or Workgroup domain;

FIG. 3B illustrates a diagram of the prior art email system in which each of the users on a network is assigned an email address;

FIG. 3C shows a close communication loop formed by three of the five users in the i-mail system, wherein the three users can communicate among themselves but cannot be contacted by others;

FIG. 3D shows comparisons between a commonly used email tool and one embodiment of the i-mail;

FIG. 4A shows an exemplary display of choosing a user and initiating a communication request;

FIG. 4B shows a flowchart or process of capturing a remote display;

FIG. 4C shows an exemplary display when the communication platform is installed to allow a system administrator to configure the permissions;

FIG. 5 shows a functional block diagram of a server device in which a server module resides in a memory space and is executable by one or more processors; and

FIG. 6 shows a functional block diagram of a client machine in which a client module resides in a memory space and is executable by one or more processors.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention pertains to processes, systems, architectures and software products for a collaborative communi-

4

cation suite, platform or system. The collaborative communication system contemplated in the present invention integrates a number of electronic communication tools to meet the collaborative communication needs for an enterprise, family members or friends. All communications are within the system. External communications such as email spamming would not intrude the system.

According to one aspect of the present invention, registered users in the system are provided public, group and private areas or domains. Depending on the privacy, communications with others may be conducted in any one of these domains. According to another aspect of the present invention, communications with others can be conducted through electronic internal mail (herein "i-mail"), instant messaging and file sharing. In particular, the i-mail operates on identifiers pertaining to registered users, all email messages by the i-mail are delivered not based on the traditional email addresses but on the identifiers, thus eliminating the possibility of the registered users receiving unwanted email from other users outside the system. According to still another aspect of the present invention, respective file lists respectively in the public, group and private domains. These file lists provide bulletin board functions to allow files for downloading from a store whenever needed, essentially eliminate the simultaneous wide distribution of an email message with attachments to all concerned. Other aspects of the present invention may be appreciated in the detailed description provided herein.

Reference herein to "one embodiment" or "an embodiment" means that a particular feature, structure, or characteristic described in connection with the embodiment can be included in at least one embodiment of the invention. The appearances of the phrase "in one embodiment" in various places in the specification are not necessarily all referring to the same embodiment, nor are separate or alternative embodiments mutually exclusive of other embodiments.

Referring now to the drawings, in which like numerals refer to like parts throughout the several views. FIG. 1A shows a basic system configuration 100 in which the present invention may be practiced in accordance with one embodiment thereof. There are a plurality of computing machines (only 102-105 are shown) coupled to a network 108 that may be a public or a private network (e.g., the Internet or a local area network). The configuration may represent an enterprise environment, large or small, in which users of the machines may be working on different tasks or share a common interest or interests. Each of the machines 102-105 operates independently from others but may provide one or more resources that other machines may need to accomplish a task.

Machines 111-113 are coupled to a network 110 that may be the same as the network 108 or a different network. A server 102 couples the networks 108 and 110 and facilitates communications between the two networks. In one exemplary configuration, the networks 108 and 110 represent two locations. In another exemplary configuration, the networks 108 and 110 represent two different networks (e.g., one is a wired network and the other is a wireless network), in still another exemplary configuration, the networks 108 and 110 represent multiple enterprises that are working on a collaborative project or something that makes it necessary to be connected. In yet still another exemplary configuration, the networks 108 and 110 are part of a global network that facilitates communications among millions of computing devices coupled to the global network.

To facilitate understanding of the present invention without loss of generality, the following description will be based on communication between or among users sharing a common interest. The users may be local or remote with respect to each

**5**

other, and may be serviced by a different Internet service provider. The common interest means any subject or purpose that is of interest to some or all of the participants in the communication. As one of the aspects of the present invention, a collaborative platform is provided to facilitate such communications among some participants sharing a common interest. Accordingly, these participants may form a communication or working group that excludes others. For example, users with the machines **103**, **104** and **111** may be working on a project A and thus form a communication group A. Likewise, users with the machines **103** and **112** may be discussing a subject B and thus form a communication group B. All together, users in the configuration **100** are interested in discussing something interesting to everyone and thus form a communication group C. Each of the communication groups (e.g., A, B and C) may be configured to be fixed, permitting authorized users communicating with each other, or flexible, permitting other users to join if permitted.

According to one embodiment of the present invention, the communication groups are managed by a collaboration server or simply a server herein. Any one of the machines in FIG. 1A may be configured to be a dedicated server or a client as well as a server. To facilitate the description of the present invention, it is assumed herein that the machine **105** is the server. As will be further described below, the server **105** manages an information flow among the participants in each of the communication groups. In addition, the server **105** can be configured to retain a copy of the information flow, for example, to facilitate a late-joined participant to catch up what has been discussed or shared among the participants.

FIG. 1B shows exemplary internal construction blocks of a system **118** in which the present invention may be implemented and executed. The system **118** may correspond to one of the machines shown in FIG. 1A. As shown in FIG. 1B, the system **118** includes a central processing unit (CPU) **122** interfaced to a data bus **120** and a device interface **124**. The CPU **122** executes certain instructions to manage all devices and interfaces coupled to data bus **120** for synchronized operations and the device interface **124** may be coupled to an external device such as another computing machine hence one or more resources in the computing machine may be utilized. Also interfaced to the data bus **120** is a display interface **126**, a network interface **128**, a printer interface **130** and a disk drive interface **138**. Generally, a compiled and linked version or an executable version of one embodiment of the present invention is loaded into the storage **136** through the disk drive interface **138**, the network interface **128**, the device interface **124** or other interfaces coupled to the data bus **120**.

The main memory **132** such as random access memory (RAM) is also interfaced to the data bus **120** to provide the CPU **122** with the instructions and access to memory storage **136** for data and other instructions, applications or services. In particular, when executing stored application program instructions, such as the compiled and linked version of the present invention, the CPU **122** is caused to manipulate the data to achieve results contemplated by the present invention. The ROM (read only memory) **134** is provided for storing invariant instruction sequences such as a basic input/output operation system (BIOS) for operation of the keyboard **140**, the display **126** and the pointing device **142**, if there is any. In general, the system **118** is coupled to a network and configured to provide one or more resources to be shared with or executed by another system on the network or simply as an interface to receive data and instructions from a human being.

According to one embodiment, a server module is loaded and executed in a machine (e.g., the machine **105** of FIG. 1A)

**6**

to manage various communications among client machines (e.g., the machines **104** and **113** in FIG. 1A), each of the client machines is loaded with a client module implementing one embodiment of the present invention. When the client module implementing in a machine is executed on a client machine, a screen display is displayed on the client machine to facilitate a user to manage communications with others. As used herein, a screen display or display means a portion or all of what is being displayed on a display screen that is a physical apparatus such as an LCD display screen associated with many types of computing devices. In addition, a machine used herein means a computing device that may include, but not be limited to, a laptop computer, a desktop computer, a PDA and a cellular phone.

FIG. 2A shows a communication panel or a window display **200** on a client machine in accordance with one embodiment. In one aspect, the display **200** shows a graphic client environment of the collaborative communication platform contemplated in the present invention. It is assumed that the user has logged into the collaboration system (e.g., the server) as an authorized or registered user "Becky" **202**. As shown in FIG. 2A, there are three domains: Public **204**, Workgroup **206** and Private **208**. The Public domain **204** is an area where all registered users may go in. The Workgroup domain **206** is an area where only workgroup members can go in. If a user belongs to one or more workgroups, that one workgroup or workgroups will be listed in this domain. For example, there are work groups named after "Marketing" and "Finance" and "Product Development", indicating registered users associated with these groups may join in for group communications. There is no limit as to a number of groups a registered user can participate. The Private domain **208** is an area where only the sign-in registered user can go in. In other words, the display **200** is being displayed on the client machine associated with the user "Becky", thus the Private domain **208** can only be accessed by Becky.

According to one embodiment, there are four categories or sections in the Public domain **204**: Online Users **210**, Directory **212**, Chat Rooms **214** and Files **216**. As the name suggests, the Online Users section **210** lists all registered users that are currently online, the Directory section **212** lists all registered users that can be communicated. In other words, the listed users in the Online Users section **210** must be members of the Directory section **212**. The Chat Rooms section **216** lists all available public chat rooms, if there is any. Depending on a purpose of a chat room, each chat room may be named after a word or phrase, for example, "Coding" indicating a chat room talking about subjects related to program coding discussions, and "investment" indicating a chat room talking about investment subjects. In any cases, these chat rooms may be participated in by anyone of the registered users in the Directory section **212**.

The Files section **216**, also referred to as a file list providing indications and listing of any files that are available for downloading by all registered users. It is well known in the prior art email systems, when one of the users desires to share a file with others, each of the other users receives a copy of the file (e.g., as attachment) regardless he or she needs it or not, now or later, and some or all. It is often the case that a file of large size in wide distribution to many email recipients can cause various problems to a network.

Fundamentally different from the prior email systems, the present invention introduces the Files list **216** that serves, in certain respect, as a messenger and an interface of a file repository. In operation, a user of the Public domain **204**, for example, an employee in an enterprise, uploads a file from his/her computer to a file repository. The file list now is an

**7**

interface of the file repository. The file does not go to or is stored in the file list of other registered users so as to avoid the wide distribution of the file across a network. Instead, the file list indicates to those eligible to access, now acting as a messenger, that a file is available for downloading. Thus the uploaded file can be downloaded whenever needed. In one embodiment, a user who uploads a file to a file repository may specify when the downloading of the file is expired. After the expiration, the file can be deleted or made unavailable for downloading by the system, wherein the system means one or more client machines, a server or a combination of both.

Different from shared network storage or directory on a network that allows a user to place a file therein and others to copy from, the file list, as shown as Files section **216** in FIG. **2**A, is just a logic interface. The user could never physically access a store behind the file list. It is well known in the art that a commonly shared folder or directory is often recognized with a network path or path, for example, //root/xyz/public which indicates a network storage drive "xyz" is allocated a folder "public". To access the folder, one needs to navigate there by following the path. On the contrary, the user does not have the knowledge as to where a store behind the file list is located on a network in the present invention.

Files section **216** in FIG. **2**A is shown as a file list acting as a messenger when a file is available for downloading. The messenger may be configured to produce an alerting message that may be displayed on a client machine. In one embodiment, the alerting message is a system-generated electronic email or instant message to those eligible to access the file in the file list (e.g., Files section **216**). In another embodiment, an audio sound is produced so that a user becomes aware that a file is available for sharing. In still another embodiment, the file list shows an updated number, for example, from 4/6 to 5/6, indicating there are six files in the file list of which five files have not been accessed. Without physically reaching a shared directory, users under the Public domain can download the file in the file list whenever there is a need, often in different times, thus alleviating the massive distribution of the file to all users via a network.

Similarly, as shown in FIG. **2**B, there are also four sections in the Workgroup **206**: Online Users **206***a*, Directory **206***b*, Chat Rooms **206***c* and Files **206***d*. The Online Users section **206***a* lists only the users in the Workgroup **206** that are currently online, the Directory section **206***b* lists only the users in the Workgroup **206** that can be communicated with. The Chat Rooms section **206***c* lists all available chat rooms, if there is any. FIG. **2**B shows that there are two chat rooms sponsored by Becky and the themes of the two chat rooms are "Linux Platform" and "Windows Platform". Similar to the Files section **216** for the Public domain **204**, the Files section **206***d* lists all files available for downloading to all users in the Workgroup **206**.

Also shown in FIG. **2**B is a Private domain **208** that includes three sections; My files **208***a*, Received files **208***b* and Chat rooms **208***c*. My files **208***a* is a private file list designated for the exclusive use of a registered user (i.e., the owner, Becky as shown). Instead of carrying files on the go, the user can upload the files that will be needed in other places or other machines to the private file list and retrieve the files in another place or in another computer when connected to the server. For example, a user uploads some files to My files **208***a* from the machine **104** of FIG. **1**A. These files can be available from the machine **112** when the user is logged onto the server from the machine **112**. As explained above, again the user is not aware of any network storage or folders on a network, the data is available for exclusive downloading, if desired, by the user as if the data is now locally available.

**8**

The Received files **208***b* is another private file list designated for receiving files sent by others. When a user wants to send one or more files to Becky for her private access, these files will be indicated available in the private file list. In any case, files in either My files **208***a* or Received files **208***b* are private to the user and can only be accessed by the user. In either case, any of the files may be deleted by the system when an expiration time comes. The Chat Rooms section **208***c* lists all available private chat rooms, if there is any.

FIG. **2**C shows a configuration **230** in which there are three stores **232**, **234** and **236** that may be allocated as part of a network storage space or distributed on a network **238**. In a typical example, the stores **232**, **234** and **236** are managed by a server, and preferably behind a firewall if maintained in an enterprise. According to one aspect of the present invention, the stores **232**, **234** or **236** can not be navigated in accordance with a path, instead a file list or an interface thereto **240**, **242** or **244** is simply provided to indicate a logic interface to which a registered user can upload a file or from which a file can be downloaded. The file lists **240**, **242** and **244** are typically displayed in a client machine executing the client module.

According to one embodiment of the present invention, each of uploaded files or folders is set for an expiration time or date. When the expiration comes, a file or an entire folder will be automatically deleted so as to keep a file list (especially the public file list **232**) organized. Depending on implementation, the expiration can be decided by a user who uploads the file or systematically by the server that all uploaded files have a fixed expiration, for example, 12 hours or 5 business days.

Return to FIG. **2**A, to facilitate the identification of the user him/herself, a thumbnail image of the user or a specially colored icon may be used among thumbnail images or icons for other users. FIG. **2**D shows an example of using photo images to associate with the users. A panel **260** may be displayed to include a list of registered users. The panel **260** shows a plurality of photo images, for example, photo images **262**, **264** or **266**, each indicating a user and, perhaps, being a photo of his or her face. Instead of looking through a list of names or similar icons, the photo images together with corresponding names facilitate a speedy and accurate selection of a user for communication. According to one example, the photo images **262**, **264** or **266** are reduced or thumbnail photos. When a mouse is pointed onto or clicked on a thumbnail photo, an enlarged version **268** thereof is displayed to ensure a correct selection is being made. Depending on implementation, the photo images may be set up by the server or uploaded by respective users.

To start chatting with a user, an initiator double clicks the name, a corresponding icon (or a photo image) of the user among all active users under the Online Users section **210**. To get contact information about a user, one can double click his or her name or a corresponding icon under the Directory section **212**. A user may change his/her own profile by double clicking the corresponding name or icon under the Directory section **212** where the sign-in name, password and contact information may be managed or updated.

It should be noted that FIG. **2**A shows only one exemplary online panel. Other forms of the online panel may be implemented. For example, the directory **212** and the online user **210** can also show a total number of the registered users and the online users. In the case of FIG. **2**A, the numbers may be shown as (11) for the total registered users and (4/11) for the online users. Alternatively, a number of offline users may be shown as well. According to another embodiment, the online section and the online users **210** may be integrated in the

**9**

directory **212** in which those that are online are specially indicated (e.g., using a different color, a different icon or superimposing a sign thereon).

One of the advantages about email systems, as opposed to online chatting, is the ability to communicate to others that are not on line. However, the prior art email systems suffers from unsolicited email as well as security issues. Once an email address of a user is obtained, anyone can send whatever to that email address regardless the user wants it or not. Worse, an inbox of the user could be filled with so many unwanted messages that bury a desired message. Not only is the bandwidth of a network wasted, the productivity of the user is significantly impacted.

According to one aspect of the present invention, as part of the collaborative system, an internal email or "i-mail" is provided. One of the advantages of the i-mail is that no other but the registered users may communicate with each other. Unlike the prior art email systems that operate on email addresses, such as john@aol.com, i-mail relies on an identifier of a user, an exemplary identifier is 8723" that is associated with "john", wherein "john" is for recognition by all registered users and "8723" is for the server to route messages properly to the right recipient. In order words, the prior art email systems do not require users to be registered with a (central) server, and instead allow email exchanges between the users via a Domain Name System (DNS) for digesting the email address.

In contrast, the i-mail limits email exchanges within registered users served by a server. Given an identifier, such as "john" or "8723", it is known to those skilled in the art that no messages originated outside the collaborative platform could reach any of the registered users of the collaborative platform even if the identifier is leaked to and abused by other than the registered users.

FIG. **3**A shows an activation or launch of i-mail by selecting a recipient under the Online Users or Directory in the Public domain or Workgroup domain. For example, if Becky wants to send an i-mail message to Edward, the name "Edward", an icon or photo image thereof may be right-clicked to choose the "Send i-mail" command that leads to a display (not shown) to Becky to compose the email. Most functions in the i-mail, from a user perspective, are substantially similar to those in the prior art email systems (e.g., Microsoft Outlook) and are not to be described further herein. However, as described above, unlike the prior art email systems that are open to everyone, the i-mail is formed with a close loop among all registered users. If there are N registered users, the close loop for the i-mail includes only the N registered users, and only the N registered users can communicate with each other, thus no unwanted email from unregistered users could penetrate into the close loop. It should be noted that N is a finite integer. New users, permitted by the server, can join the collaborative platform at anytime and from anywhere.

FIG. **3**B illustrates a diagram of the prior art email system **250** in which each of the users **254**-**258** on a network **252** is assigned an email address. An email address identifies a user as well as his/her affiliation. For example, john@aol.com means a user named "john" uniquely located with the service provider "America online". When an email message is sent to the email address, a mail server by America online is first located, and a user named "john" is then located for receiving the message. Therefore, each of the users **254**-**258**, regardless of their respective affiliations, can be contacted at his/her email address.

In contrast, FIG. **3**C shows a close communication loop **262** formed by three of the five users **255**, **256** and **258** in the

**10**

i-mail system. These three users **255**, **256** and **258** can communicate among themselves but can not be contacted by others, for example, users **254** and **257** in the collaborative communication platform contemplated in the present invention. As described above, these three users **255**, **256** and **258** are registered users in the collaborative communication platform and assigned respectively an identifier, such as 8823, 8825, and 8892 for the three users **255**, **256** and **258**. In other words, the identifier is not necessarily an email address, providing no clue of who the user may be and which organization (or mail server) the user may be affiliated with.

Although the identifier itself is not necessarily limited to non-email address, even if an email address is used as an identifier, such identifier is not used for what an email address is supposed to be used. In other words, the i-mail does not need to locate an email server by an email address to deliver an email message. In fact, an i-mail message never goes out of the system and an email address is of no use at all in delivering an i-mail message. As a result, no unwanted email messages or Spam from other than the three users **255**, **256** and **258** are possible to penetrate into the i-mail system.

To better understand the differences between the prior art email and the i-mail contemplated in the present invention, FIG. **3**D shows comparisons between a commonly used email tool and one embodiment of the i-mail. The differences may be appreciated from at least five different aspects. First, an account set-up procedure in email involves determinations of name display (e.g., John Smith, jsmith or, John), an email address (e.g. john@abc.com), a server type (POP3, IMAP, HTTP), a server name, and corresponding account name and password on the server. As shown in FIG. **3**D and described above and further below, the i-mail does not operate on the typical email address and use the commonly used email prototype. Because all communications can only be conducted with a collaborative communication system, no messages would be going out and routed through email servers on the way to a recipient, the i-mail does not use the typical email address and the commonly used email prototype for email communications between sending or receiving parties.

Second, there is a significant question regarding the identity of an email sender. In the prior art email that is, in one perspective, built on the concept of the postal system, anyone can send any (e) mail to any one as long as there is a legitimate (e) mail address. Therefore the identity of an email sender can not be known in advance, thus providing opportunities of receiving unwanted email, spamming or virus spreading. In contrast, the i-mail, in one perspective, built on the concept of internal or intra-departmental system, operates on a close loop of registered users, the identities of all email senders are known, no email messages from outside of the system would penetrate into the system. Further, the prior art email has no control on adding new users and naming users, thus allowing an illicit user to impersonate a known user for sending an unwanted (often harmful) message. Evidently, such activities would never happen in the i-mail given the underlying designs.

Third, regarding the difference in email composition, the prior art email always requires email addresses of either a sender and a receiver so that an email can be properly routed to the sender and replied, the i-mail does not require the email addresses.

Fourth, when an email message is sent out, one or more Domain Name Servers are needed to determine an email server for the recipient in the prior art email. Since the i-mail operates within all registered users, no email messages would go out of the system and neither DNS servers would be needed. In addition, it is well known that a common process

**11**

of sending and receiving an email message in the prior art email is what is referred to as Push-Push-Pull process. Namely, a composed email is pushed from a client machine to an email server for the sender, the email server then pushes the email to an email server for the recipient. The email is then pulled from the email server by a client machine of the recipient. In contrast, the i-mail does not have Push-Push-Pull. In one embodiment, an i-mail message is pushed from a client machine to a server that immediately pushes the email to the recipient online or allows the recipient to pull the email in a mail inbox from the server when needed.

Fifth, although the prior art email allows messages to be communicated within co-workers, the underling mechanism possesses the openness that allows messages from unpredictable sources, thus facilitating spamming, virus spreading, ad-ware, breaks/leaks/holes. As described above, the i-mail operates on a closed loop of registered users, such undesirable byproducts or features from the prior art email systems would not happen in the i-mail.

Another aspect of the present invention is to send one or more files to a file list that may be public, semi-public or private. Instead of widely spreading a file as an attachment to a group of users via email, the file list, as the name suggests, serves as a bulletin board to announce what files are available for a user, users in a workgroup or all registered users. Instead of sharing a file instantly with all users, the file list provides a logic interface from which a user can download one or more available files when needed. Referring back to FIG. 2B, the files **205** is a public file list, any registered users in the directory under the public **204** may access the public file list by uploading or downloading any file. Similarly, the files **206***d* of FIG. 2B is a semi-public file list, only registered users in the directory under the group **206** may access the file repository **206***d* by uploading or downloading any file.

Under the private **208**, there are, however, two types of file lists, my files **208***a* and received files **208***b*. The my files **208***a* is allocated for sole access by the user associated with the private **208**. The user can upload certain files to a store via the private file list (e.g., my files **208***a*) and download them from another location or another computing device, which provides enormous mobility of data or files used by the user. The received file **208***b* is also a file list that can be only accessed by the user. In some cases, instead of sending a file as an attachment to the user, another user can upload the file that is shown in the received files **208***b* associated with the user, which provides the flexibility of when and how to access the file by the user.

FIG. 2C shows three different types of file lists, a public file list **240**, a semi-public file list **242**, and a private file list **244**. Each of the lists **240**, **242**, and **244** are respectively coupled to a store **232**, **234**, or **236**. The stores **232**, **234**, and **236** may be a storage space on a network **238**. As described above, a network storage currently used in an enterprise is identified by a path and can be accessed by the path within the enterprise. In contrast, the stores **232**, **234**, and **236** coupled to the network **238** are not identified by a path, thus can not be navigated by users and can only be accessed through the file lists **240**, **242** and **244**. As the file lists **240**, **242** and **244** are provided in the client module, they can be respectively accessed by corresponding users from anywhere at any time.

According to one embodiment, the file lists **240**, **242** and **244** are closely managed by the server to ensure that accessibility of the file lists **240**, **242** and **244** is in accordance with its corresponding classification (i.e., public, semi-public and private). Depending on implementation, the respective connections between the file lists **240**, **242** and **244** and the stores

**12**

**232**, **234**, and **236** may be established over a virtual private network (VPN) or by secured channels (e.g., encryption).

When a file is uploaded to a file list, a user is offered to determine when the file is no longer available for downloading, which facilitates the management of these file lists, especially those public or semi-public file lists, to prevent prolonged stay of unnecessary files therein. In one embodiment, the user is offered a display window when a file is uploaded to a file list. The display window shows a set of predetermined times for the user to select a time or set up a time to expire the uploaded file. In another embodiment, the system automatically sets up an expiration time for an uploaded file, for example, 7 days. After the expiration, the file is automatically deleted or made unavailable for further downloading. It should be noted that the description above about the file lists is based on a file, those skilled in the art could appreciate that this aspect of the present invention is equally applied to a folder including multiple files.

Another aspect of the present invention is to enable local and remote screen capture functions. The local screen capture enables a user to electronically capture one or more screen displays off a display screen used by another user. The captured display as an image can be saved for many applications such as system support, project collaboration and employee internet access management. Depending on implementation or particular setting, the remote capture may be controlled in accordance with various permission configurations. One exemplary permission configuration that may be deployed in an enterprise is to have a rank based permission that allow a higher-ranked user to remote capture a screen display of a lower-ranked user. Another exemplary permission configuration is to allow everyone in a workgroup to remote capture a screen display of each other.

To capture a display screen of a registered user named "Frank", as shown in FIG. 4A, the name in the Online Users section is selected, a list of commands is displayed, perhaps by right clicking a mouse button, wherein a command "Capture User Screen" or "Capture User Window" is activated. As a result, whatever being displayed in a client machine used by Frank will be captured with or without notifying Frank, the image is then delivered to the user that requested the capture.

In one embodiment, the client module running on a client machine is embedded with a screen capturing module. One exemplary screen capturing module is provided by Inbit incorporated having a business address 1340 South De Anza Boulevard, Suite 202, San Jose, Calif. 95129, USA. Whenever the screen capturing module is triggered by a local or remote command, a display, either a whole screen or an active window, is captured.

FIG. 4B shows a flowchart or process **420** of capturing a remote display. The process **420** is initiated when a first user wants to capture a display of a remote machine by a second client. One exemplary scenario is that the first user is supporting the second user by checking out the status of what is going on with the machine being used by the second user. Another exemplary scenario is to facilitate an organization to monitor what the remote machine is doing, in which case, the captured image may be achieved.

As described above, the second user is identified and chosen by the first user from the Online users, indicating that the second user is logged on. At **422**, the process **420** awaits what the first user wants to do with the second user (e.g., i-mail to, chatting with and uploading a file to the second user). It is assumed that the first user wants to capture a display on the remote machine being used by the second user.

The process **420** moves to **424**, wherein a capturing command is generated and sent across a network to the remote

13 14

machine. In general, the command includes a first address identifier identifying the client machine being used by the first user, a second address identifier identifying the remote machine being used by the second user, parameters pertaining to whether to capture an entire display of the screen, an active display of the screen or a top-most window. At the **426**, the command arrives at the remote machine and is judged in accordance with permissions set up by the second user or by the server. If the permission configuration at the remote machine does not allow such capture, the process **420** goes back to **422**. In some cases, the permission configuration may allow only a regional screen capture or pop up a warning to the second user that someone is capturing the screen display.

FIG. **4C** shows an exemplary display when the communication platform is installed to allow a system administrator to configure the permissions. Depending on actual deployment of the platform, the permission configurations may include, but not limited to, that

1. any registered user can capture another registered user's screens without permission;
2. users are classified, higher rank users can capture lower rank users' screens without permission, but same rank users must have permissions to capture another user's screens;
3. all users must have permissions to capture another user's screen;
4. permission is granted by dragging a user to a permission list on the client side; and
5. server Administrator may set an option to decide if a user should be notified when his/her screen is captured by another user.

In any case, it is assumed that the permission configuration allow such capture, the command triggers a screen capturing module in the remote client machine. The screen capturing module activates to capture the display without causing any attention from the second user at **428**. The captured image is then sent to the first user at **430**.

Referring now to FIG. **5**, there is shown a functional block diagram of a server device **500** in which a server module **502** resides in a memory space **503** and is executable by one or more processors **501**. The server device **500** may be any of the computing devices shown in FIG. **1A**. The server device **500** includes a network interface **504** to facilitate the communication between the server device **500** and other devices on a network and a storage space **505**. The server module **502** is an executable version of one embodiment of the present invention and delivers, when executed, features/results contemplated in the present invention.

According to one embodiment, the server module **502** comprises an administration interface **506**, an account manager **508**, a security manager **510**, a user monitor **512**, a local server manager **514**, a partner access manager **516**, an access report manager **518**, and a rules manager **520**.
Administration Interface **506**:

As the name suggests, the administration interface **506** facilitates a system administrator to register users and grant respective access privileges to the users and is an entry point to the server module from which all sub-modules or the results thereof can be initiated, updated and managed. In one embodiment, the system administrator sets up and manages the following processes:

Instant Messaging for Public messaging, Workgroup messaging, and Private messaging;

Chat Rooms including Public chat rooms, Workgroup chat rooms, and Private chat rooms;

Internal Mail (i-mail) sending i-mail to public, sending i-mail to workgroups, and sending i-mail to specified co-workers;

File Sharing for public file lists, and workgroup file lists and file transfer via private file lists; and

Permission based remote screen capture.
Account Manager **508**:

Essentially, the account manager is a database or an interface to a database **507** maintaining all the registered users and their respective access privileges. In operation, the account manager **508** authenticates a user when the user logs onto the server **500** and also determines if the user can access a file list. For example, when a user tries to log on to the server, the user is prompted to input confidential signatures (e.g., username and password). The confidential signatures are then verified by the account manager **508**. If the confidential signatures are successfully verified, the user is authenticated and now can access the system. In general, the account manager **508** is where an enterprise may be able to control its users.
Security Manager **510**:

This module is configured to provide security when needed. When necessary, messages, data or files being shared among registered users may be encrypted thus only authorized user may access the secured messages, data or files. In one embodiment, the user key manager **510** is not activated to retrieve the keys therein. In some situations, an encryption key to a secured file is securely maintained in the module and can be retrieved by the system administrator to access a secured document in case the key in a client machine is corrupted or the user or users who have the access privilege to access the secured document are no longer available. In another embodiment, the module **510** is configured to initiate a secure communication session when it detects that a registered user accesses a file list remotely over an open network.
User Monitor **512**:

This module is configured to monitor the status of registered users and generally works in conjunction with the account manager **508**. In particular, the user monitors **512** is configured to manage all registered users as a single group, respective user groups, and individual users as private user group so that unauthorized users would not get into a group they are not permitted. In addition, the user monitor **512** is configured to push or deliver related messages, updates, and uploaded files, if there is any, to a registered user.
Local Server Manager **514**:

In some cases, a collaborative communication platform needs to collaborate with another collaborative communication platform so that users in one collaborative communication platform can communicate with users in another collaborative communication platform. In this case, a server responsible for managing a collaborative communication platform is referred to as a local server. Accordingly, the local server manager **514** is a module configured to enable more than one local servers to communicate. Essentially, the server **500** in this case would become a central server to coordinate the communication among the local servers.
Rules Manager **516**:

This module is primarily used to configure various rules imposed across the system to control communications therein. For example, certain rules are provided to certain users that may capture displays of other client machines without asking for any permission.
Message Report Manager **518**:

A module is configured to record or track all messages (e.g., i-mail messages, instant messages, shared files) communicated among registered users or groups of users. These messages are retained for a period of time so that a non-

US 8,819,120 B1

**15**

participated user may catch up what was communicated among the users. In one embodiment, certain types of messages are made to be kept for a predefined time in compliance of regulations or retention of evidences. In operation, the message report manager **518** works in conjunction with the database **507** and indexes a retained message for later retrieval. In another embodiment, the message report manager **518** is configured to record all types events that include, but may not be limited to, a time registered user is logged onto and off the system, when an uploaded file or an i-mail message is accessed by a user.

It should be pointed out that the server module **502** in FIG. **5** lists some exemplary modules according to one embodiment of the present invention and not every module in the server module **502** has to be implemented in order to practice the present invention. Those skilled in the art can understand that given the description herein, various combinations of the modules as well as modifications thereof, without departing the spirits of the present invention, may still achieve various desired functions, benefits and advantages contemplated in the present invention.

Referring now to FIG. **6**, there is shown a functional block diagram of a client machine **600**. As used herein, the client machine **600** is a computing device used by a user and may be located anywhere on a network. The client machine **600** can, for example, be a desktop computer, a mobile device or a laptop computer. According to one embodiment, the client machine **600** includes a processor **601**, a client module **602**, a memory space **603**, a network interface **605** and a local store **607**. The client module **602** resides in the memory space **603** and, when executed by the processor **601**, delivers features, advantages and benefits contemplated in the present invention. Through the network interface **605**, the client machine **600** is capable of communicating over a data network with other computers, such as the server **500** of FIG. **5**.

In operation, the client module **602** is executed in the client machine **600**, a user, after authenticated by the server, can communicate with other registered users in the collaborative communication platform without being interrupted or spammed. All communications (messages/file/data exchanged and email messages delivered via the i-mails) stay in the collaborative communication platform. According to one embodiment, the client module **602** includes a number of sub-modules including a screen capture module **604**, an internal mail (i-mail) module **610**, an instant messaging manager **608**, a security manage **611** and file lists **614**.

Screen Capture Module **604**:

This module is a software agent configured to capture a display of a computing machine. The software agent is activated by a command and can capture an entire screen display, a regional screen display or a display of an active window. The command may be provided locally or remotely. In the case that the command comes from a remote machine, the screen capture module **604** operates in conjunction with the network interface **605** and transports an image of the captured display to the remote machine. In one embodiment, when the image is to be transferred out of the computing machine, the image may be compressed and/or encrypted by a compression/encryption module **612** to facilitate efficient and/or secured delivery of the image to the remote machine.

Instant Messaging Module **608**:

This module facilitates chatting session among two or more registered users. In one embodiment, the instant messaging module **608** is configured to display a notification to a user when the user has received a file uploaded by another user. The file can then be downloaded before an expiration time whenever the user needs it.

**16**

Internal Mail Module **610**:

This module is responsible for facilitating internal electronic mail exchanges among the registered users. In terms of functions from the user perspective, this module performs similarly as those popularly used such as Microsoft Outlook. The module provides tools to compose, read, forward, and delete an email message.

Security Manage **611**:

This module is a counterpart of the module **510** of FIG. **5** and is configured to provide security when needed. In some cases, messages, data or files being shared among registered users may be encrypted thus only authorized user may access the secured messages, data or files. In other cases, the module **510** is configured to initiate a secure communication session with the module **510** in the server when it detects that the user thereof accesses a file remotely over an open network.

File List Manager **614**:

This module manages file lists and ensures that these file lists are interfaced properly with one or more stores managed by the server. In one embodiment, whenever the file list manager **614** detects or is notified that one of the stores has been uploaded a file, an alerting message is sent to those who are supposed to access the file. In addition, the file list manager **614** may be configured to provide a set of rules as to what files may be provided for other users to share or how long an uploaded file may be retained for downloading.

It should be pointed out that the client module **602** in FIG. **6** lists some exemplary sub-modules according to one embodiment of the present invention and not every module in the client module **602** has to be implemented in order to practice the present invention. Those skilled in the art can understand that given the description herein, various combinations of the sub-modules, may achieve certain functions, benefits and advantages contemplated in the present invention.

There are numerous functions, benefits and advantages in the present invention. One of them is that the present invention provides a true collaborative communication platform that allows users registered with the system to communicate with each other without intrusion from others outside the system. Another one of the functions, benefits and advantages of the present invention is the i-mail that operates on identifiers pertaining to the registered, respectively, all internal email are delivered not based on the traditional email addresses but on the identifiers. Still another one of the functions, benefits and advantages of the present invention is the file lists that eliminate the simultaneous wide distribution of an email message with attachments to all concerned, and instead provides a list function to allow files for downloading whenever needed. Still another one of the functions, benefits and advantages of the present invention is the remote screen capture function that allows one user to capture a display screen of another remotely. Yet still another one of the functions, benefits and advantages of the present invention is the security inherently provided in the system as the system operates on a closed loop of registered users, where new users can join anytime with permission. Other functions, benefits and advantages are apparent to those skilled in the art given the detailed description herein.

The present invention has been described in sufficient details with a certain degree of particularity. It is understood to those skilled in the art that the present disclosure of embodiments has been made by way of examples only and that numerous changes in the arrangement and combination of parts may be resorted without departing from the spirit and scope of the invention as claimed. For example, the client module may be executed on a server and accessible from an

**17**

internet browser executing on a client machine. For example, the client displays FIG. **2**A, FIG. **2**B and FIG. **3**A may be displayed in a browser. Accordingly, the scope of the present invention is defined by the appended claims rather than the foregoing description of embodiments.

We claim:

**1**. A method for sharing data via a server, comprising:

receiving by the server a request from a first client machine to establish a connection with a second client machine;

forwarding the request by the server to the second client machine;

permitting the first client machine to communicate with the second client machine via the server in response to the second client machine granting the request;

in response to the first client machine uploading a file to a file list coupled to a store that is remotely located to the first and second client machines:

notifying the second client machine by the server of the file, and

establishing a level of access to the file list coupled to the store, wherein the store is independent of a file path and unnavigable to by a user; and

establishing a connection between the file list and the store by a secured channel to download the file.

**2**. The method of claim **1**, wherein a first user is a member of a group, and the request is to invite a second user to join the group, and the group is closed to other users that have not been invited by a member of the group, no mutual communication is allowed between a member of the group and any of the other users.

**3**. The method of claim **2**, wherein the file is distributed to all members in the group without sending a copy of the file to each of the all members in the group at the same time.

**4**. The method of claim **1**, wherein the notifying the second client machine s includes sending an alerting message to the second client machine that the file is available to access.

**5**. The method of claim **1**, wherein the notifying the second client machine includes displaying an instant message on the second client machine that the file is available to access.

**6**. The method of claim **5**, wherein the file list is separate from a window configured for message exchanging between the first and second client machines.

**7**. The method of claim **4**, wherein the indication includes an audio type that is heard in response to a second user logging into the system.

**8**. The method of claim **4**, wherein the indication includes an alerting message that attracts attention from the second client machine in response to a second user logging into the system via the second client machine.

**9**. The method of claim **1**, wherein the request is delivered to the second client machine without using an email address of a second user.

**10**. The method of claim **9**, further providing a directory of all members in a group, each of the members being identified with an identifier that is not in a form of an email address.

**11**. The method of claim **10**, wherein the members are allowed to perform various communications including internal mail, message exchanging and file sharing, the communications are conducted based on the identifier of each of the members without using an email address.

**12**. A method for sharing data via a server, the method comprising:

displaying, by a server, a user interface including a list of users registered with the system, each of the users being identified with an identifier that is not in form of an email address;

**18**

establishing a group with some of the users as members of the group;

updating the user interface to include the group so that each of the members knows what group the each of the members is associated with and who else is in the group;

facilitating private communications only between or among the members, no one else other than the members is able to conduct the private communications, which include at least file sharing, internal mail and message exchanging, wherein the private communications are conducted over a network via the server based on the identifier of each of the members in the group, and wherein the file sharing is conducted with operations of:

accepting in a file list coupled to a store a file from a first member in the group;

in response to the first member uploading the file to the store:

notifying a second member by the server of the file, and

establishing a level of access to the file list coupled to the store, wherein the store is independent of a file path and unnavigable to by a user; and

establishing a connection between the file list and the store by a secured channel to download the accessible file.

**13**. The method of claim **12**, wherein the file is distributed to the members in the group without sending a copy of the file to each of the members in the group at the same time.

**14**. The method of claim **13**, wherein the accepting in a store the file from a first member in the group includes placing the file into the store by accepting the file from the first member.

**15**. The method of claim **14**, wherein the notifying the second member includes causing to display the file list to show an availability of the file after the file is received in the store from the first member.

**16**. The method of claim **12**, wherein the file sharing without distributing copies of files at the same time to the members in the group maximizes usage of a limited bandwidth of the network.

**17**. The method of claim **12**, wherein the identifier is not an email address that includes an "@" sign and domain information.

**18**. The method of claim **12**, wherein the internal mail allows one member to send an electronic message to another member without an email address of the another member, wherein the electronic message includes at least a recipient area, a subject area and a message area, the recipient area is not provided for an email address but for an identifier of a recipient to receive the electronic message, the subject area includes a topic to indicate what texts in the message area are related to.

**19**. A system for sharing data, comprising:

a client machine, including a memory for storage of program instructions, configured to display a user interface delivered from a server, the user interface including a list of users registered with the system, each of the users being identified with an identifier, wherein the server is configured to:

establish a group with some of the users as members of the group;

update the user interface to include the group so that each of the members knows what group the each of the members is associated with and who else is in the group;

facilitate private communications for the members, no one else other than the members is able to conduct the

**19**

private communications including at least file sharing, internal mail and message exchanging, wherein the private communications are conducted over a network via the server based on the identifier of each of the members in the group, and wherein the file sharing is conducted with operations of:

accepting in a file list coupled to a store a file from a first member in the group;

in response to the first member uploading the file to the store:

notifying a second member by the server of the file, and

establishing a level of access to the file list coupled to the store, wherein the store is independent of a file path and unnavigable to by a user; and

establishing a connection between the file list and the store by a secured channel to download the accessible file.

**20**. The system of claim **19**, wherein the user interface is caused to include the file list to show an availability of the file after the file is received in the store.

**21**. The method of claim **1**, wherein the level of access to the file list comprises a private classification and wherein the secured channel is in response to the private classification of the file list.

**22**. The method of claim **1**, wherein the secured channel comprises encryption utilizing an encryption key.

* * * * *