# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| BCS SOFTWARE, LLC, § § § § § § § § § § § | |
| Plaintiff, | |
| v. | Civil Action No. 6:21-CV-00051-ADA |
| ZOHO CORPORATION, | |
| Defendant. | |

# DEFENDANT ZOHO CORPORATION'S
# RESPONSIVE CLAIM CONSTRUCTION BRIEF

**I.     INTRODUCTION**

The asserted patent, U.S. Patent No. 8,819,120 (the '120 patent), describes a system and method for "providing a collaborative platform" for a group of members that includes both "messaging environments," such as private electronic mailing, and file sharing among members of the group. *See, e.g.*, '120 patent at 1:15–20.  This "group communication system allows a group of users to participate in communications including internal mail, message exchanging and accessing files." *Id.* at Abstract.

Plaintiff BCS Software, LLC contends that neither[1] of the disputed terms requires construction.  But Plaintiff's own brief and the "alternative" constructions it proposes show that the disputed terms do, in fact, have a special meaning in the context of the claimed invention. The specification of the '120 patent unmistakably contrasts the claimed terms with the prior art, and, as Zoho proposes, they should be construed accordingly.

**II.    LEGAL STANDARDS**

Claim construction begins with the claim language because the claims "define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  There is a "heavy presumption" that claim terms carry their "ordinary and customary meaning," which is the meaning that a person of ordinary skill in the art would understand the claim term to have during the relevant timeframe. *Id*. at 1313.

Claim language is read "in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013).  The specification "'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best

---

[1] BCS and Zoho have agreed on the construction of "store" and "independent of a file list," so only two terms remain in dispute.

guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (citation omitted). In particular, "[i]diosyncratic language, highly technical terms, or terms coined by the inventor are best understood by reference to the specification." *3M Innovation Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1321 (Fed. Cir. 2013). When as here the inventor acts as its own lexicographer, clearly defining the meaning of terms used in the claims, the inventor's definition should control. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

### III.    THE DISCLOSURE OF THE '120 PATENT

The asserted patent, U.S. Patent No. 8,819,120 (the '120 patent), is purportedly aimed at providing a way for users to message and share files among members of a private group that avoids unsolicited messages, such as spam, from outside the group members. '120 patent at 1:52–2:3. The system also seeks to avoid "unwanted or expected email with attachments," which, according to the specification, "take up a significant portion of the bandwidth of a network and could choke the network." *Id*. The disclosure of the '120 patent suggests two solutions to these problems.

First, to avoid unwanted attachments, the specification describes the use of "file lists," software components that serve as the sole interface to network storage and "provide bulletin board functions to list files available for downloading whenever needed, essentially eliminating the simultaneous wide distribution of an email message with attachments of the files to all concerned." *Id.* at 3:1–4. In its role as a "logic interface" to a network store, a file list identifies available files to a user without disclosing the network location, or the paths to that location, to the end-user. *Id.* at 7:12–23. Stores "are not identified by a path," and "and can only be accessed through the file lists…." *Id*.at 11:56–59. According to the specification, this distinguishes "file lists" and their connected stores from prior art alternatives, such as "shared network storage or directory on a network that allows a user to place a file therein and others to

copy from." *Id*. at 7:12-21; *see also id.* at 11:53-56.  These alternatives permitted users to access files by navigating to the location of a shared store.  *Id*.

Second, to avoid spam and other unwanted communications, the specification teaches that only "users registered with the system" may use the system to communicate, so that "[a]ll communications are within the system" and "[e]xternal communications such as email spamming" are kept out of the system.  *Id.* at 4:5-7.; *see also* 15:40-42 ("All communications … stay in the collaborative communication platform.").  The specification distinguishes its "internal mail" or "i-mail" messaging approach from "the prior art e-mail systems," which permit such unwanted messages from outside sources.  *Id*. at 9:14-27.

These two elements—file lists and internal mail—are the core of the claimed system and methods.  They represent the solutions to the problems identified in the prior art.  According to the inventors, these create a "true collaborative environment in which co-workers or individuals involved can share information and data, and participate in discussion confidentially without intrusions from others," and which "also provides data mobility to users."  *Id.* at 2:21-29.

IV.  **DISPUTED TERMS**

A.  **"File List" (Claims 1, 6, 12, 15, 19, 20, 21)**

| BCS's Construction | Zoho's Construction |
|---|---|
| No construction necessary/plain and ordinary meaning<br><br>Or in the alternative, "logic interface displayed on a client machine that allows a user to download from or upload files to a store on a network" | "a logic interface displayed on a client machine that allows a user to download or upload files to a store on a network, notifies users when files are available for download, and lists available files" |

The inventors imbued the term "file list" with a clear special meaning to provide a solution to the problems they identified in the prior art.  *See Thorner* at 1365.  The term means

more than its ordinary meaning, a list of files, as BCS' own proposed alternative construction admits.

And, contrary to BCS's proposed construction, the "file list" does more than just permit uploading and downloading files. The specification defines the "file list" as the client-side logical interface to files stored in the network store. "As a messenger and an interface of a file repository," the file list allows users to upload and download files from stores, notifies users when files are available for download, and displays available files to users. '120 Patent at 6:62-64.

To address the inventors' concern for network congestion caused by sharing files over email, file lists "provide bulletin board functions to list files available for downloading whenever needed, essentially eliminating the simultaneous wide distribution of an email message with attachments of the files to all concerned." *Id.* at 3:1-4; *see also id*. at 11:23-28. The file list is explicitly defined as 1) a logic interface on a client, that 2) allows files to be uploaded to and downloaded from a store, 3) notifies users when a new file is shared, and 4) lists available files without listing their location on the store.

BCS and Zoho agree on the first two points: a file list is a logic interface on the client. The specification instructs that users connect to the collaboration system through "a client module," of which the "file list" is a part. '120 patent at 15:36-46; Fig. 6 (showing file lists 614); 8:20-22; Fig. 2C. And the parties also agree



Fig. 6

4

that the file list serves as "a logic interface" to the store, rather users directly accessing and navigating through the network storage, as in the prior art. Through this "logic interface," the file list is a place "to which a registered user can upload a file or from which a file can be downloaded," and which displays a list of available files. BCS Op. Br. at 3 (quoting '120 patent at 8:15-22); *see also id.* (quoting '120 patent at 11:23-29 ("the file list provides a logic interface from which a user can download one or more available files when needed")).

However, BCS's construction fails to address the other defined functions of the file list. As the same passages cited by BCS show, the file list also "notifies users when files are available for download." That is, "[t]he file list, as the name suggests, serves as a bulletin board **to announce what files are available for a user**." '120 patent at 11:23-29 (emphasis added); *see also id*. at 3:1-4. There is no disclosed embodiment or other description of the file list in the specification that does not include this functionality. *See Microsoft Corp. v. Multi-Tech. Sys., Inc.*, 357 F.3d 1340, 1348 (Fed. Cir. 2004) (statements in specification limit claim language where they "are not limited to describing a preferred embodiment, but more broadly describe the overall invention[]"). For instance, when a user "uploads a file from his/her computer to a file repository," "the file list indicates to those eligible to access, now acting as a messenger, that a file is available for downloading." *Id.* at 6:62-7:11. The specification similarly describes the file list as "acting as a messenger when a file is available for downloading," at which point it sends "an alerting message" such as "a system-generated electronic email or instant message" or "an audio sound is produced." *Id.* at 7:24-25.

Finally, the file list, as the "interface of the file repository," hides the details of the storage location from the user. Users cannot "physically access a store behind the file list." *Id*. at 7:12-16; *see also id.* at 7:35-37 ("Without physically reaching a shared directory, users under

the Public domain can down load the file in the file list...") 8:15-20 (stores "can not be navigated in accordance with a path, instead a file list or an interface thereto 240, 242 or 244 is simply provided to indicate a logic interface to which a registered user can upload a file or from which a file can be downloaded.").

As the inventors explained, this is a key distinction from existing "shared network storage" or "directories on a network." *Id*. at 7:12-23. Prior art "shared network storage" and "directories on a network" "allow[] a user to place a file therein [i.e., upload files] and others to copy from [download from]." *Id*. Thus, merely allowing a user to upload and download files is insufficient to define a "file list."

Zoho's construction does not include this requirement, because this aspect of the file list is reflected in every independent claim through the limitation "establishing a level of access to the file list coupled to the store, wherein the store is independent of a file path and unnavigable to by a user." Thus, the fact that the file list hides the location of files in the store need not be baked into the construction of "file list."

In sum, Zoho's proposed construction tracks the definition of the term provided by the inventors in the specification and captures the file lists' unique role in the claimed invention—a client-side logic interface that alerts users of available files and serves as the sole means of access to files stored on a network.

B.      **"Internal Mail" (Claims 12, 19)**

| BCS's Construction | Zoho's Construction |
|---|---|
| No construction necessary/plain and ordinary meaning<br><br>Or in the alternative, "private electronic communications that include exchange of messages only among registered users by a server." | "a private electronic communication system that uses only internal identifiers to deliver email and delivers email to users through a private server" |

The parties' other disputed term relates to the messaging functions of the '120 patent. Again, contrary to BCS' proposal, there is no plain and ordinary meaning of "internal mail"; it is a defined term in the specification. *See Thorner* at 1365. As described above, a goal of the inventors of the '120 patent was to create a spam-free communication system. To achieve that goal, the inventors describe "an internal email or 'i-mail'" feature. '120 patent at 9:14-16.

BCS emphasizes the lack of plain meaning in its own brief, where it argues that "'Internal Mail' is *defined as i-mail and is expressly distinguished over emails* by specifying that i-mails are exchanged without using email servers and email addresses." BCS Op. Br. at 7 (emphasis added). As BCS observes, "internal mail" is a special form of email that uses internal identifiers "for the server to route messages properly to the right recipient," rather than email addresses, thereby preventing communications with users outside the system. *Id.* (quoting the '120 patent at 9:14-23); *see also* '120 patent at 9:18-20 ("Unlike the prior art email systems that operate on email addresses…, i-mail relies on an identifier of a user."). Thus, "[o]ne of the advantages of the i-mail system is that no other but the registered users may communicate with each other." '120 patent at 9:16-17. "[A]n i-mail message never goes out of the system and an email address is of no use at all in delivering an i-mail message." *Id*. at 10:15-19. That is, an i-mail is private to the claimed system, unlike email, which is global. Thus, the system "limits email exchanges

within registered users served by a server," and "no messages originated outside the collaborative platform could reach any of the registered users of the collaborative platform even if the identifier is leaked to and abused by other than the registered users." *Id.* at 9:28-34.

Zoho's proposed construction is the correct one. It captures the distinctions of the claimed internal mail over email: a private means of communication that uses internal identifiers to deliver email to users.

BCS' alternative construction, "[1] private electronic communications that include [2] exchange of messages only among [3] registered users [4] by a server," fails to distinguish the claimed internal mail from prior art email systems. For example, [3] two registered users of a system, such as a prior art bulletin board, could exchange a private electronic communication, such as [1] a private email, between [2] only the two of them, i.e., without copying anyone else, through an [4] email server using their regular email addresses, to which spammers could also separately message them. As shown above, the same four elements in BCS' proposed construction are present in this scenario but communicating using regular email is expressly distinguished by the inventors from i-mail.

BCS criticizes Zoho for including "email" in its construction, BCS Op. Br. at 7, ignoring the summary of the invention, which explicitly describes the internal mail as a form of email. The summary of the invention teaches that "electronic internal mail" "operates on identifiers pertaining to registered users," so that "**all email messages by the i-mail** are delivered not based on the traditional email addresses but on the identifiers, thus eliminating the possibility of the registered users receiving unwanted email from other users outside the system." '120 patent at 2:57-65; *see also id*. at 9:35-41 (describing, in Fig. 3A, the user "Becky" "send[ing] an i-mail message to Edward, by "choos[ing] the 'Send i-mail' command … to compose **the email**.").

8

Zoho's construction properly captures the specification's definition of internal mail—an organization's private electronic communication system like email that uses only internal identifiers to deliver email and delivers email to the organization's users through a private server.

## V. CONCLUSION

For all these reasons, Zoho requests that the Court adopt its proposed claim constructions.

Dated: August 19, 2021          Respectfully submitted,

By: /s/ *Ryan J. Marton*
Darryl J. Adams (TX Bar No. 00796101)
dadams@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
tel: 512.402.3550
fax: 512.402.6865

Ryan Marton (admitted *pro hac vice* 223979)
Hector Ribera (admitted *pro hac vice* 221511)
Phillip Haack (admitted *pro hac vice* 262060)
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone: (415) 360-2515
Email: ryan@martonribera.com
hector@martonribera.com
phil@martonribera.com

*Attorneys for Defendant Zoho Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served on the counsel of record via the CM/ECF system on _____August 19, 2021_____.

By:   /s/ Ryan J. Marton
        Ryan J. Marton