# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| BCS SOFTWARE, LLC, § § § Plaintiff, § § v. § Civil Action No. 6:21-CV-00051-ADA § ZOHO CORPORATION, § § Defendant. § § | |

# DEFENDANT ZOHO CORPORATION'S
# SUR-REPLY CLAIM CONSTRUCTION BRIEF

**I.      INTRODUCTION**

Plaintiff's reply brief doubles-down on its incorrect premise: that terms explicitly defined by the inventors of its patents require no construction. BCS's suggestion that "file list" and "internal mail" need no construction is clearly erroneous given the special meanings ascribed to them by the inventors of the '120 patent. *See Trustees of Columbia Univ. v. Symantec*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) ("As our en banc opinion in *Phillips* made clear, 'a claim term may be clearly redefined without an explicit statement of redefinition' and '[e]ven when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents.'") (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320-21 (Fed. Cir. 2005)).

**II.     DISPUTED TERMS**

   **A.      "File List" (Claims 1, 6, 12, 15, 19, 20, 21)**

| BCS's Construction | Zoho's Construction |
|---|---|
| No construction necessary/plain and ordinary meaning<br><br>Or in the alternative, "logic interface displayed on a client machine that allows a user to download from or upload files to a store on a network" | "a logic interface displayed on a client machine that allows a user to download or upload files to a store on a network, notifies users when files are available for download, and lists available files" |

The inventors of the '120 patent describe file list as a very particular piece of software with a particular list of functionalities. BCS's proposed construction removes functionality that is part of the "file list" as envisioned by the inventors—that the file list both lists available files and notifies users when files are available for download—features that Zoho's proposed construction properly includes.

1

The "file list" of the '120 patent displays a list of files available for download. As Zoho described in its responsive brief (Dkt. 26), the file list shows "files available for downloading whenever needed, essentially eliminating the simultaneous wide distribution of an email message with attachments of the files to all concerned." '120 patent at 3:1-4; 7:50-51 ("the Files section 206d lists all files available for downloading"); 16:47-50 ("file lists … instead provides a list function to allow files for downloading whenever needed."); *see also id*. at 11:23-28. BCS's proposed construction does not require listing available files. And in its reply brief, BCS acknowledges that "[t]he '120 patent specifications require the 'file list' to list files available for downloading . . . ." BCS Reply Br. at 5. BCS's brief is correct, but its proposed construction is not. A file list must "list available files."

BCS's omission of the other requirements the inventors used to define the claimed file list renders its proposed construction fatally flawed. Contrary to BCS's claim that it is an unnecessary limitation, the file list, as the inventors defined it, also notifies users of files that are newly available to download. The core purpose of the file sharing scheme claimed by the '120 patent is to "essentially eliminat[e] the simultaneous wide distribution of an email message with attachments of the files to all concerned." '120 patent at 3:1-4; *see also id*. at 11:23-28. Of course, to adequately replace an email with attachments, the file list must inform users when new files are available. To do that, the "the present invention introduces the Files list 216 that serves, in certain respect, as a messenger and an interface of a file repository," i.e., the file list is not just the interface to files, but a messenger as well. *Id.* at 6:62-65; *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 5778 F.3d 1021, 1025 (Fed. Cir. 2015) ("When a patentee 'describes the features of the 'present invention' as a whole,' he alerts the reader that 'this description limits the scope of the invention.'") (quoting *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 936

(Fed. Cir. 2013)).  The specification then explains that, after a file upload, "[t]he file does not go to or is stored in the file list of other registered users so as to avoid the wide distribution of the file across a network.  Instead, **the file list indicates to those eligible to access, now acting as a messenger, that a file is available for downloading**."  *See* '120 patent at 6:65-7:5 (emphasis added).  Notifying the users of newly available files is not a cherry-picked embodiment, but a core feature of the invention that goes beyond simply listing available files.  *See* '120 patent, Abstract ("Each of the members in the group gets notified of the availability of the file for sharing….").

In sum, the file list does more than list files; while "acting as a messenger," it tells users that a file is now available.  As BCS observes, the specification lists three examples of how a user is notified: 1) by an alerting message from the system, 2) by an audio sound, and 3) by updating a number indicating how many files are available to download.  There is no disclosed embodiment that does not include some form of this functionality.  Contrary to BCS's suggestion, Zoho's construction does not require a particular way to notify a user.  *See* BCS Reply at 5.  But just like the inventors listed this as a key feature of their file lists, Zoho's construction requires notifying a user of a new file in some manner.  Any of the examples in the specification would meet Zoho's proposed construction.

Further, Zoho's construction goes beyond merely listing files because the inventors also did so when they defined the file list to include separate functions:  serving as both "a messenger" and "an interface of a file repository."  '120 patent at 6:62-65.  Zoho's proposed construction is also congruent with the other claim limitations identified by BCS, which require notifying a user or machine upon upload of a file.  BCS Reply at 5-6.  Zoho's proposed construction merely links the component which does the notifying—the file list—to the

3

functionality it embodies according to the specification and which is otherwise recited in the claims.

       B.       **"Internal Mail" (Claims 12, 19)**

| BCS's Construction | Zoho's Construction |
|---|---|
| No construction necessary/plain and ordinary meaning[1] | "a private electronic communication system that uses only internal identifiers to deliver email and delivers email to users through a private server" |

Coined terms like "internal mail" are exactly why the claim construction process exists—to clarify for the jury the meaning of terms defined by the inventors. "Internal mail" is not a term for which "the ordinary meaning of claim language as understood by a person of skill in the art [is] readily apparent," because the inventors used this term "idiosyncratically." *Phillips*, 415 F.3d at 1314. The specification explains what it means. Zoho's construction captures the clearly recited description of the "i-mail" in the written disclosure. In its brief, BCS argues that internal mail is not email, that it need not use internal identifiers, and that it is not sent through a private server. It is wrong on all counts.

As Zoho explained in its responsive brief, "internal mail" is itself a kind of email that uses internal identifiers rather than an email address to deliver the email. The specification unambiguously describes it as a special form of email that uses internal identifiers to deliver mail through a central server limited to registered users:

> Unlike the prior art email systems that operate on email addresses, such as john@aol.com, i-mail relies on an identifier of a user, an exemplary identifier is 8723" that is associated with "john", wherein "john" is for recognition by all registered users and "8723" is for the server to route messages properly to the

---

[1] BCS proposed an alternative construction, "private electronic communications that include exchange of messages only among registered users by a server," in its opening brief.

4

> right recipient. In order[sic] words, the prior art email systems do not require users to be registered with a (central) server….

'120 patent at 9:14-25.

> In particular, the i-mail operates on identifiers pertaining to registered users, all **email messages by the i-mail** are delivered not based on the traditional email addresses but on the identifiers, thus eliminating the possibility of the registered users receiving unwanted email from other users outside the system.

*Id.* at 2:60-65 (emphasis added); *see also* 16:1-7 ("The [Internal Mail Module] provides tools to compose, read, forward, and delete an email message."). Because the identifiers are internal to the system, "no messages originated outside the collaborative platform could reach any of the registered users of the collaborative platform even if the identifier is leaked to and abused by other than the registered users." *Id.* at 9:28-34. And because the server is private to those users, only registered users can use it. These are the key aspects of "internal mail" that allow it to avoid the "spamming" issues identified in the prior art. '120 patent at 1:52-2:3, 4:5-7.

The specification identifies "five different aspects" between prior art email and the internal mail. First, because "communications can only be conducted with a collaborative communication system," i-mail does not use standard email servers to route mail. *Id.* at 10:34-40. Second, the i-mail is private, limited to registered users. It is "built on the concept of internal or intra-departmental system," and "operates on a close loop of registered users," so "the identities of all email senders are known, no email messages from outside of the system would penetrate into the system." *Id.* at 10:46-52. Third, "the i-mail does not require the email addresses" of senders or recipients. *Id.* at 10:57-61. Because it uses an internal identifier "the i-mail does not need to locate an email server by an email address to deliver an email message." *Id.* at 10:12-17. Fourth, i-mail does not use a domain name system (DNS) address in an email to locate a server for the recipient, because it is limited to the registered users of the server. *Id.* at 10:62-67. Finally, unlike i-mail, email is open— "the underling mechanism [in email] possesses

5

the openness that allows messages from unpredictable sources." *Id.* at 11:12-16.  I-mail, in contrast "operates on a closed loop of registered users." *Id.* at 11:17-20.

BCS contends that the inclusion of a "private server" is unsupported by the specification because the only use of "private" in the patent relates to public, semi-public, and private areas or "domains."  BCS Reply at 7.  As BCS correctly notes, the "domains" do not relate to the server but describe different kinds of user groups on that centralized private server.  But Zoho's construction does not limit the visibility of users on the private server; it simply calls the server a private one because "no other but the registered users may communicate with each other."  '120 patent at 9:16-17.  As described above, the specification repeatedly contrasts this with the public servers used in email, where anyone can email someone on another mail server.  *See id.* at 9:23-27.

In fact, the example relating to Figure 3A described by BCS (at 9:35-54) neatly captures why Zoho's inclusion of "private" and "email" are correct.  Internal mail is special form of email:  the user "Becky" sends an "i-mail message to Edward," a process that requires her to "compose the email."  Internal mail is also limited to interactions through a private server: "unlike the prior art email systems that are open to everyone," the i-mail system is private—"only the N registered users can communicate with each other."  *Id.*  Zoho's construction captures the essence of the internal mail described by the inventors—an organization's private electronic communication system like email that uses only internal identifiers to deliver email and delivers email to the organization's users through a private server.

### III.    CONCLUSION

For all these reasons, Zoho requests that the Court adopt its proposed claim constructions.

6

Dated: September 7, 2021                             Respectfully submitted,

                            By:   /s/ *Ryan J. Marton*
                                  Darryl J. Adams (TX Bar No. 00796101)
                                  dadams@sgbfirm.com
                                  SLAYDEN GRUBERT BEARD PLLC
                                  401 Congress Ave., Suite 1650
                                  Austin, TX 78701
                                  tel: 512.402.3550
                                  fax: 512.402.6865

                                  Ryan Marton (admitted *pro hac vice* 223979)
                                  Carolyn Chang (admitted *pro hac vice* 217933)
                                  Phillip Haack (admitted *pro hac vice* 262060)
                                  MARTON RIBERA SCHUMANN & CHANG LLP
                                  548 Market Street, Suite 36117
                                  San Francisco, CA 94104
                                  Telephone:  (415) 360-2515
                                  Email:       ryan@martonribera.com
                                                   carolyn@martonribera.com
                                                   phil@martonribera.com

                                  *Attorneys for Defendant Zoho Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing is being served on the counsel of record via the CM/ECF system on _____September 7, 2021_____.

                                                  By:    /s/ *Ryan J. Marton*
                                                          Ryan J. Marton